UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| RICHARD METCALF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-204 |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| *Commissioner of* | ) | |
| *Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Richard Metcalf seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).  *See* doc. 1.

**I.   GOVERNING STANDARDS**

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, reweigh the evidence, or substitute

---

[1]  Martin O'Malley is now the Commissioner of Social Security and has been substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  The Clerk is **DIRECTED** to update the docket accordingly.

1

> our judgment for that of the Commissioner." *Id.* at 1178 (internal quotations and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the

past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x. 878, 879 (11th Cir. 2015) (footnote added).

## II. BACKGROUND

Metcalf, who was born on March 30, 1986, was 35 years old when he applied for DIB and 36 years old at the time of the ALJ's decision on March 27, 2023. Tr. 8, 11, 21. He alleges disability beginning on March 20, 2017. Tr. 11. Metcalf has a PhD in nuclear engineering. Tr. 16, 42. He previously worked as a as a research engineer for nuclear equipment and a nuclear engineer. Tr. 20. After a hearing, tr. 38-74 (hearing transcript), the ALJ issued an unfavorable decision, tr. 8-22.

---

limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

The ALJ found that Metcalf's Ehlers-Danlos syndrome, hypermobility spectrum disorder, vasovagal syncope syndrome, orthostatic hypertension, chronic headaches, multi-joint arthritis and/or degeneration, and obesity constituted severe impairments,[3] but that none of his impairments, alone or in combination, met or medically equaled a Listing. Tr. 14-16. The ALJ then found that Metcalf retained the RFC for sedentary work as defined in 20 CFR 404.1567(a) except:

> limited to occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; no workplace hazards (e.g., unprotected heights or moving mechanical parts); no commercial driving; no uneven terrain; no concentrated exposure to extremes of temperature or humidity; no more than occasional operation of foot controls with either lower extremities; and no production pace work, meaning work that affects or is affected by the pace of others, such as assembly line work.

Tr. 16; *see also* tr. 16-20. Metcalf, the ALJ determined, could not perform his past relevant work, but could perform jobs that exist in significant numbers in the national economy. Tr. 20-22. Specifically, the ALJ found that Metcalf "would have been able to perform the requirements of" (1) addresser, (2) document preparer, and (3) type copy examiner. Tr. 21-22.

---

[3] The ALJ determined Metcalf's adjustment and depressive disorders and hyperlipidemia were not medically determinable impairments. Tr. 14.

Therefore, he was found not disabled. Tr. 22. The Appeals Council denied review. Tr. 1-7. Metcalf filed the instant action seeking judicial review of the ALJ's decision. *See* doc. 1.

## III. ANALYSIS

Metcalf argues that while the ALJ addressed Metcalf's "limitations of function," he did not address Metcalf's "restrictions." *See* doc. 9 at 1, 4, 7-9. Metcalf claims that his providers "have advised him to avoid certain activities not because he cannot perform those activities, but because performing those activities causes additional joint damage." *Id.* at 8. For example, while he *can* perform sedentary activity, he claims that performing sedentary activity on a sustained basis is "medically ill-advised." *Id.* "Absent an *articulation* of a finding not just about limitations on function, but on restrictions based on medical advice to avoid further damage/injury," Metcalf argues, "the Unfavorable Decision was not sufficient and the case should be remanded for further consideration." *Id.* at 8-9 (emphasis in original). He cites no legal authority to support this position. *Id.*

An "ALJ need not discuss every piece of evidence in its decision." *Matos v. Comm'r, Soc. Sec. Admin.*, 2022 WL 97144, at *3 (11th Cir. Jan.

5

10, 2022). Under the new regulations, ALJs are not required to assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. *See* 20 C.F.R. § 404.1520c.[4] An ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)-(5). An ALJ is only required to explain how he considered the supportability and consistency of a given medical opinion or prior administrative medical finding. *See Id.* § 404.1520c(b)(2); *see also Matos*, 2022 WL 97144, at *4.

Here, the ALJ considered a medical opinion from Metcalf's primary care physician, Dr. Lawrence Zottoli, regarding Metcalf's limitations and found that opinion "generally unpersuasive." Tr. 19; *see also* tr. 1062-63 ("Opinion on Restrictions/Limitations for Patient" by Dr. Zottoli). In deciding that the opinion was unpersuasive, the ALJ gave specific reasons, with citations to the record, for why he believed Dr. Zottoli's

---

[4] The new regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Metcalf filed his claim on June 14, 2021. Tr. 11.

opinion was unsupported by and inconsistent with the record. *See* tr. 19. After a reviewing the record, the Court finds that substantial evidence supports those conclusions. *See Biestek*, 587 U.S. at 103 ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)). The ALJ therefore appropriately considered Dr. Zottoli's opinion as required by the new regulations discussed above. Metcalf has failed to show any error in the assessment of Dr. Zottoli's opinion.[5]

The other pieces of evidence Metcalf identifies to support his contention that he "had medical *restrictions* that were more stringent than his *limitations of function*," doc. 9 at 4, are not medical opinions subject to the analysis required by 20 C.F.R. § 404.1520c. The medical records he points to,[6] *see* doc. 9 at 3-4, constitute "[o]ther medical

---

[5] The Court notes that Dr. Zottoli's opinion does not meaningfully differentiate between "limitations of functions" and "restrictions," as Metcalf does in his brief, nor does it explicitly say that Dr. Zottoli recommends these particular limitations to prevent further damage from Ehlers-Danlos syndrome. *See* tr. 1062-63.

[6] The Court also observes that none of the medical records Metcalf highlights as showing that he had "medical restrictions that were more stringent than his limitations of function," doc. 9 at 3-4, actually show that he had medical restrictions that were more stringent than his limitations of function in order to prevent further damage from Ehlers-Danlos syndrome. *See* tr. 771 (indicating that Metcalf is working with a physical therapist to "minimize his risk for injury with his hypermobility"); *see also* tr. 756, 804, 860, 864 (physical therapy records listing

7

evidence" under 20 C.F.R. 404.1513(a)(3).  His own testimony that he was subject to restrictions designed to avoid further injury, *see* doc. 9 at 3; *see also, e.g.*, tr. 61-62 (hearing transcript), is "[e]vidence from nonmedical [a] source" under § 404.1513(a)(3).  ALJs are generally not required to make any specific findings when evaluating other medical evidence or evidence from nonmedical sources–they are simply required to "review all of the evidence relevant to [a] claim."  *See* 20 C.F.R. § 404.1520b.  The ALJ stated in his decision that he conducted a "careful consideration of the entire record" and made his decision about Metcalf's RFC based on "the evidence of record as a whole."  Tr. 16, 20.  Again, an "ALJ need not discuss every piece of evidence in its decision."  *Matos*, 2022 WL 97144, at *4.  To the extent Metcalf's testimony that he was subject to restrictions designed to avoid further injury also involved a discussion of his symptoms, the ALJ considered such testimony and found that "[t]he objective medical evidence in the record d[id] not support the frequency, severity, or limiting effects of [Metcalf]'s alleged symptoms of impairment

---

"hypermobility" as a "precaution/restriction," but failing to indicate what precautions or restrictions may apply and whether any restrictions apply outside of the physical therapy context); tr. 837 (referencing "any joint hypermobility precautions given by Dr. Knight" but failing to indicate whether those precautions exist or what they may be); tr. 1057-61 (podiatrist records finding that Metcalf "likely sustained a hyperextension injury similar to a turf toe injury").

during the period of issue. *See* tr. 16-17. The ALJ's evaluation of Metcalf's testimony about his symptoms as compared with the objective medical evidence in the record was consistent with the requirements of 20 C.F.R. § 404.1529. The Court therefore finds that the ALJ appropriately considered Metcalf's medical records and testimony. Metcalf has failed to show any error in the assessment of this evidence.

Metcalf also points to an April 13, 2023 letter from Dr. Zottoli which outlines "limitations for Mr. Metcalf to follow . . . to reduce further damage from Ehlers-Danlos Syndrome." Tr. 35-36. He argues that the ALJ was required to consider this letter, which was drafted and submitted after the ALJ rendered his decision. *See* doc. 9 at 8 ("The ALJ wasn't bound to uncritically accept those medical restrictions based on medical advice to avoid further damage, but he was bound to consider them, including even evidence created after the ALJ's decision"). He is incorrect. The *Appeals Council*, not the ALJ, is required to consider new evidence submitted after the ALJ has rendered his decision. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320-21 (11th Cir. 2015). The Appeals Council considered the April 13, 2023 letter and found that the evidence "d[id] not show a reasonable probability that it

9

would change the outcome of the decision." Tr. 2. Because Metcalf does not challenge the Appeals Counsel's conclusion about the letter, *see generally* doc. 9, the correctness of that determination is not before the Court.

The ALJ appropriately evaluated Metcalf's proffered medical opinions and evidence. Metcalf has not identified any error in the ALJ's analysis, much less one requiring remand. *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding that remand is not warranted unless an error shows unfairness or clear prejudice).

## IV.   CONCLUSION

The Commissioner's final decision is supported by substantial evidence in the record. For the reasons articulated above, the final decision of the Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 18th day of July, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA